

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| LAURA ARLENE WALKER-CONLEY, § | |
| Plaintiff, § | |
| § | |
| vs. § | Civil Action No. 6:14-1262-MGL-KFM |
| § | |
| CAROLYN W. COLVIN, § | |
| Acting Commissioner of Social Security, § | |
| Defendant. § | |

### ORDER ADOPTING THE REPORT AND RECOMMENDATION AND AFFIRMING DEFENDANT'S FINAL DECISION DENYING BENEFITS

This is a Social Security appeal in which Plaintiff seeks judicial review of the final decision of Defendant denying Plaintiff's claim for Disability Insurance Benefits (DIB). *See* 42 U.S.C. § 405(g). The parties are represented by excellent counsel. The matter is before the Court for review of the Report and Recommendation (Report) of the United States Magistrate Judge suggesting to the Court that Defendant's final decision denying Plaintiff's claim for DIB be affirmed. The Report was made in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the Court may

accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions.  28 U.S.C. § 636(b)(1).

The Magistrate Judge filed the Report on June 8, 2015, Plaintiff filed her objections on June 25, 2015, and Defendant filed her response to Plaintiff's objections on July 13, 2015.  The Court has carefully considered the objections, but finds them to be without merit.  Therefore, it will enter judgment accordingly.

Plaintiff filed her application for DIB on June 20, 2011, alleging that her disability commenced on March 12, 2008.  The Social Security Administration denied her claim, both initially and upon reconsideration.  Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on December 19, 2012.  On January 10, 2013, the ALJ issued a decision holding that Plaintiff was not disabled under the Act.  The Appeals Council declined review.  Plaintiff then filed this action for judicial review.

The Agency has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a).  The five steps are: (1) whether the claimant is currently engaging in substantial gainful activity; (2) whether the claimant has a medically determinable severe impairment(s); (3) whether such impairment(s) meets or equals an impairment set forth in the Listings; (4) whether the impairment(s) prevents the claimant from returning to her past relevant work; and, if so, (5) whether the claimant is able to perform other work as it exists in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920(a)(4)(I)-(v).

It is Plaintiff's duty to both produce evidence and prove that she is disabled under the Act. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).  And, it is the duty of the ALJ, not this Court, to make findings of fact and to resolve conflicts in the evidence.  *Hays v. Sullivan*, 907 F.2d

1453, 1456 (4th Cir. 1990). "Under the substantial evidence standard . . . ,we must view the entire record as a whole. Additionally, the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir.1984)).

First, Plaintiff complains that the Magistrate Judge erred in suggesting that the ALJ properly weighed the opinion evidence of Dr. Mark F. Pelstring, Plaintiff's treating physician. The Court disagrees.

If the treating physicians's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record, the opinion is entitled to controlling weight. *See* 20 C.F.R. § 404.1527(c)(2). The ALJ, however, "may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir.1992). If the treating physician's opinion is not given controlling weight, the ALJ evaluates and weighs the treating physician's medical opinion under the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. 20 C.F.R. § 404.1527 (2005); *Johnson v. Barhart*, 434 F.3d 650, 654 (4th Cir. 2005).

According to Dr. Pelstring's February 13, 2012, medical statement, he noted that

> he had treated [Plaintiff] since June 11, 2008. Her symptoms included pain, stiffness in multiple joints and muscle groups, edema, and recurrent migraine headaches. Her medical history included obesity, hypothyroidism, insomnia, fibromyalgia, degenerative joint disease, migraine headaches, hyperlipidemia, and hypertension. Dr. Pelstring opined that the plaintiff could stand for fifteen minutes at a time and sit for thirty minutes at a time. He stated that she could work two hours per day. She could occasionally lift five pounds and frequently lift zero pounds. She could occasionally bend, and occasionally manipulate objects with the right and left hand. She should never stoop, never balance, and never raise her right or left arm above shoulder level. She would frequently need to elevate her legs during a workday. In his opinion, the plaintiff suffered from credible pain that was severe. Her long-term prognosis was guarded, and Dr. Pelstring did not think she could be employed in the future.

Report 7-8 (citing A.R. 287).

As the Magistrate Judge observed, "[t]he ALJ gave Dr. Pelstring's opinion 'little weight' and gave several reasons for this finding" *Id*. at 12 (citing A.R. 22). As set forth in the ALJ's decision,

> Little weight is accorded to Dr. Pelstring's opinion as it is not supported by his own office notes and is inconsistent with the generally benign examination performed by Dr. Rittenberg. Dr. Pelstring noted that [Plaintiff's] long-term prognosis was "guarded;" however, he did not refer [Plaintiff] to a physical therapist, to a neurologist, to a rheumatologist, to a vascular surgeon, or to a pain management specialist. Notably, an x-ray of [Plaintiff's] left knee taken February 14, 2012, revealed only "mild" degenerative changes. X-rays of [Plaintiff's] left ankle, left foot, and left shoulder, were also normal. Dr. Pelstring's office notes dated February 13, 2012, indicate that he accessed [Plaintiff] as having normal range of motion in her left knee. [Plaintiff] underwent a steroid injection in her left knee on February 27, 2012. It is reasonable to suggest that if [Plaintiff's] impairments were as limiting as Dr. Pelstring indicated, he would have referred her to a pain specialist or at the very least a physical therapist.

A.R. 22 (citations omitted).   Further, according to the ALJ, "Dr. Pelstring's opinion was inconsistent with the generally benign examination performed by Dr. Rittenberg." Report 12 (citing A.R. 22).   According to the ALJ,

> Charles Rittenberg, M.D., completed a comprehensive physical examination in August 27, 2011. Dr. Rittenberg observed that [Plaintiff] was in no acute distress. [Plaintiff] was able to get on and off the exam table without difficulty. She was also able to bend at the waist to 90 degrees, and she exhibited full range of motion in all of her joints. Her muscle strength was 5/5 throughout, and her deep tendon reflexes were normal. No muscle atrophy was noted. Her fine motor movements were normal. She noted that her Raynaud's improved with warmth and Propranolol. [Plaintiff] complained of tenderness to palpation over her mid back and she reported diffuse joint pain. Dr. Rittenberg noted that the only objective finding in relation to [Plaintiff's] fibromyalgia and arthritis, was crepitus in her left knee. [Plaintiff] indicated that she was able to walk 1/4 mile.

A.R. 21 (citation omitted).

Dr. Jim Liao, one of the state agency medical consultants, stated that Plaintiff had the following exertional limitations: she was occasionally able to lift and/or carry (including upward pulling) twenty pounds; frequently able to lift and/or carry (including upward pulling) ten pounds, stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday; and sit (with normal breaks) for a total of about six hours in an eight-hour workday. *Id*. at 65. Dr. Liao also found that Plaintiff's ability to push and/or pull (including operation of hand and/or foot controls) was unlimited, except for the limits on lifting and/or carrying. According to Dr. Liao, Plaintiff's weight was a considered a contributing factors to her exertional limitation. *Id*.

As to Plaintiff's postural limitations, Dr. Liao stated that: she is capable of frequently climbing ramps and/or stairs, stooping (i.e. bending at the waist), kneeling, crouching, and crawling;

and occasionally climbing ladders and/or ropes and/or scaffolds. *Id*. Dr. Liao concluded that Plaintiff's balancing ability was unlimited. *Id*.

When asked to "[e]xplain postural limitations and how and why the evidence [supported his] conclusions[,]" Dr. Liao wrote: "Limit posturals due to freq due to reported joint pain. No limitation to balance as [Plaintiff's] gait is norm and her neuro is intact. Further limit l/r/s/ to occa due to pain and reported [history] of migraines." *Id*.

Dr. Liao stated that Plaintiff did not have any manipulative, visual or communicative limitations, but did have one environmental limitation: "Hazards (machinery, heights, etc.)[,]" for which she was to "[a]void even moderate exposure." *Id*. at 65-66. Dr. Hugh Wilson, another state agency medical consultant, was in agreement with Dr. Liao's findings. *Id*. at 76-79.

According to the ALJ, she

> considered the medical opinions of [Plaintiff's] treating physician[ ] [Dr. Pelstring], evaluating physician[ ] [Dr. Rittenberg] and the state agency medical consultants [Dr. Jim Liao and Dr. Hugh Wilson]. The opinions of the State Agency medical consultants have been accorded significant weight inasmuch as they are generally consistent with the medical evidence of record; however, [the ALJ] has added the additional limitations of frequently using her bilateral upper extremities for fine and gross manipulation to account for [Plaintiff's] Raynaud's syndrome.

*Id*, at 21 (citations omitted).

Plaintiff contends that the ALJ failed to provide any discussion regarding the fact that "Dr. Pelstring consistently noted no range of motion restrictions, no atrophy, no abnormal gait, and no weakness, or did not check any boxes indicating deficiencies." Objections 1 (citation omitted). Thus, Plaintiff argues, in effect, that because the ALJ failed to discuss Dr. Pelstring's finding, the Magistrate Judge should not have recommended that substantial evidence supports the ALJ's

6

decision. Moreover, Plaintiff complains that "the ALJ failed to discuss treatment notes that documented ongoing fatigue, edema, and pain, stiffness, and swelling in her joints[.]" *Id*. at 3.

"While [Defendant's] decision must 'contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating [Defendant's] determination and the reason or reasons upon which it is based,' 42 U.S.C. § 405(b)(1), 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision[.]'" *Reid v. Comm'r, of Social Sec. 769 F.3d 861, 865* (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)). Further, Defendant, "through the ALJ and Appeals Council, stated that the whole record was considered, and, absent evidence to the contrary, [the Court] take[s] her at her word." *Id*. (citing *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) ("[O]ur general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter").

Plaintiff also claims that the ALJ's reliance on x-rays to determine the presence or severity of Plaintiff's alleged fibromyalgia and Rhynaud's syndrome was improper because ""[x]rays are not listed as specific criteria that would indicate the presence or severity of fibromyalgia or Raynaud's syndrome." Objections 5 (citations omitted). But, the ALJ's conclusion on whether to discount Dr. Pelstring's opinion neither stands nor falls on the ALJ's consideration of the x-rays. Stated differently, there is substantial evidence to support the ALJ's decision to discount Dr. Pelstring's opinion, even if the x-rays are disregarded.

As to the ALJ's statement concerning Plaintiff's failure to seek more aggressive treatment, Plaintiff argues that her treating physician failed to refer her to any specialist because of her inability

to pay. But Plaintiff fails to demonstrate what efforts she exerted to obtain such treatment. Such failure is fatal to this claim.

Plaintiff essentially asks the Court to reweigh the evidence. But, that is not the province of this Court in matters such as this. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of [Defendant]." *Mastro v. Apfel*, 270 F.3d 171, 176 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)).

Suffice it to say that, although the ALJ's opinion "is not a model of clarity," Report 17, Objections 6, and it certainly could have been more detailed, the decision as it is written contains no legal error and sets forth substantial evidence to support the ALJ's decision to discount Plaintiff's treating physician's opinion. As such, the Court will overrule this objection.

Second, Plaintiff contends that the Magistrate Judge is mistaken in recommending that the ALJ appropriately considered the Plaintiff's alleged fibromyalgia. The Court is unconvinced.

Under Social Security Ruling (SSR) 12-2p,

> [b]ecause the symptoms and signs of [fibromyalgia] may vary in severity over time and may even be absent on some days, it is important that the medical source who conducts the [consultative examination] has access to longitudinal information about the person. However, we may rely on the [consultative examination] report even if the person who conducts the [consultative examination] did not have access to longitudinal evidence if we determine that the [consultative examination] is the most probative evidence in the case record.

12 WL 3104869, at *5.

As the Magistrate Judge stated, "it is clear that the ALJ fully considered [Plaintiff's fibromyalgia in assessing the plaintiff's RFC." Report 17. In her decision, the ALJ wrote that

8

Plaintiff testified "that she ha[d] not been treated by a rheumatologist or referred to one, for her diagnosis of fibromyalgia. [Plaintiff] is prescribed Savella, Tramadol, and Celebrex for her fibromyalgia." A.R. 20. She further noted that Plaintiff's "[m]edical records indicate that [she] has been treated only by her primary care physician, Mark F. Pelstring, M.D., for her Raynaud's syndrome and her fibromyalgia." *Id.* According to the ALJ, Plaintiff "admitted that she was able to take her medications independently, cook, shop for groceries with her husband, read, do crossword puzzle, have coffee with her friends, take walks with her husband, drive, do light household chores, feed her pets, and do laundry, activities, which generally reveal functioning at a greater level than alleged." *Id*. at 21. "Dr. Rittenberg noted that the only objective finding in relation to [Plaintiff's] fibromyalgia and arthritis was crepitus in her left knee." *Id*.

As the Magistrate Judge opined, ["[t]he decision indicates that the ALJ fully considered [Plaintiff's] fibromyalgia and specifically accounted for the credibly-established limitations in the RFC assessment. Based upon the foregoing, the [Magistrate Judge found] that the RFC finding is based upon substantial evidence and without legal error." Report 17. The Court agrees with the Magistrate Judge's conclusion. Consequently, it will overrule this objection as well.

Third, according to Plaintiff, the Magistrate Judge incorrectly accepted the ALJ's conclusion regarding Plaintiff's alleged migraine headaches. The Court is unpersuaded.

The ALJ noted that Plaintiff testified that "[s]he has migraines three to four times each month, which last one to three days." A.R. 20. She also stated that Plaintiff had "been diagnosed with, treated for, or given a history of . . . migraines" but that they had "been controlled with medication and/or other conservative measures and/or have not resulted in any limitation of [her] ability for basis work-related activities." *Id.* at 16-17. Therefore, the ALJ did not find that Plaintiff's

9

migraines amounted to a severe impairment. *Id*. at 17.

An impairment is considered "severe" only if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). There is substantial evidence in the record to support the ALJ's finding that Plaintiff's migraines did not amount to a severe impairment.

The ALJ pointed out in her decision that Plaintiff had testified that "[s]he has migraines three to four times each month, which last one to three days." A.R. 20. Both Dr. Liao and Dr. Wilson found that Plaintiff's migraines were treated effectively with medication. A.R. 66, 78 ("Neuro–[Plaintiff's] migraines are treated w/ [medications]. There is not evidence of [every other day]. NOT SEVERE)." Nevertheless, they each advised that Plaintiff's climbing ladders and/or ropes and/or scaffolds should be limited to occasionally "due to pain and reported [history] of migraines." A.R. 65, 77. The ALJ adopted these limitations.

Substantial evidence in the record supports the ALJ's conclusion that Plaintiff's complaints of migraines were properly considered. Nevertheless, Plaintiff argues that her migraines were not treated effectively with medications, as the ALJ held. But then, if that were actually the case, Plaintiff fails to explain why Dr. Pelstring did not refer her to a specialist. As noted above, the excuse that she was unable to afford other treatment without any evidence that she sought any assistance in obtaining such treatment is unavailing.

As before, the Court finds no legal error here and the ALJ's decision on this matter is supported by substantial evidence. Hence, the Court will overrule this objection, too.

Fourth and finally, Plaintiff maintains that the Magistrate Judge erred in concluding that the ALJ properly evaluated her credibility. This argument is without merit.

As the Magistrate Judge observed, "[t]he ALJ considered [Plaintiff's] testimony and found that while [her] impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence, and liming effects of those symptoms were not fully credible. Report 21 (citing A.R. 20).

As already detailed above, Plaintiff "admitted that she was able to take her medications independently, cook, shop for groceries with her husband, read, do crossword puzzle, have coffee with her friends, take walks with her husband, drive, do light household chores, feed her pets, and do laundry, activities, which generally reveal functioning at a greater level than alleged." A.R. 21. As the ALJ observed, "[t]hese activities, when viewed in conjunction with the other inconsistences, further limit [Plaintiff's] credibility. Of note, her description of her daily activities are representative of a fairly active lifestyle and are not indicative of a significant restriction of activities or constriction of interests." *Id*.

The ALJ must make credibility determinations, and these determinations should refer specifically to the evidence supporting them. *Hatcher v. Sec'y, HHS*, 898 F.2d 21, 23 (4th Cir. 1989). In this case, the ALJ gave sufficient reasons, including Plaintiff's daily activities, for refusing to credit fully all of Plaintiff's allegations. Because the ALJ had the opportunity to observe demeanor and determine credibility, the Fourth Circuit accords great weight to an ALJ's observations on these matters. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

Plaintiff complains that "[t]he Magistrate Judge's conclusion that the ALJ adequately considered treatment history is not supported by a thorough reading of the decision." Objections 11. But, as already stated, Defendant, "through the ALJ and Appeals Council, stated that the whole

record was considered, and, absent evidence to the contrary, [the Court] take[s] her at her word." *Reid,* 769 F.3d at 865.

The Court has considered Plaintiff's other arguments and finds them to be unpersuasive. Therefore, the Court will also overrule those objections.

In sum, the Court holds that there is substantial evidence to support the ALJ's conclusion that Plaintiff was not disabled under the Act during the relevant time period and that the ALJ's decision is free from reversible legal error. The ALJ's determination is also reasonable.

To the extent that the ALJ could have done a better job in explaining her decision, because the ALJ's decision is overwhelmingly supported by the record, to remand the case to Defendant would be a waste of time and resources. *See Bishop v. Comm'r of Soc. Sec.*, 583 Fed. App'x 65, 67 (4th Cir. 2014) ("[I]f the [ALJ''s] decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time.") (citation and internal quotation marks omitted)). Therefore, the Court will affirm Defendant's final decision to deny Plaintiff's claim for DIB.

After a thorough review of the Report and the record in this case pursuant to the standard set forth above, the Court overrules Plaintiff's objections, adopts the Report, and incorporates it herein. Therefore, it is the judgment of the Court that Defendant's final decision denying Plaintiff's claim for DIB is **AFFIRMED**.

**IT IS SO ORDERED**.

Signed this 10th day of August. 2015, in Columbia, South Carolina.

s/ Mary G. Lewis
MARY G. LEWIS
UNITED STATES DISTRICT JUDGE